Filed 9/21/21  Pettie v. Amazon.com CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| TERRY PETTIE et al., | |
| Plaintiffs and Respondents, | E074241 |
| v. | (Super.Ct.No. CIVDS1908923) |
| AMAZON.COM, INC. et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Reversed.

Morgan, Lewis & Bockius, John S. Battenfeld, Max Fischer, David B. Salmons and Michael E. Kenneally for Defendants and Appellants.

Fernandez & Lauby and Misty M. Lauby for Plaintiffs and Respondents.

1

## I.  INTRODUCTION

On March 22, 2019, plaintiffs Terry Pettie and Rey Borge filed a civil complaint alleging various employment claims against defendants Amazon.com, Inc. and Amazon Logistics, Inc.  The trial court denied a motion to compel arbitration brought by defendants, and defendants appeal asserting the trial court erred in its interpretation of various provisions of the purported agreement to arbitrate.

However, we need not address defendants' claims of error based upon interpretation of the purported arbitration agreement at this time.  The trial court never made a factual finding on the threshold issue of whether an agreement to arbitrate existed between the parties.  Without the existence of an agreement, there is no occasion to consider what law should govern the interpretation of the purported agreement, whether its terms are enforceable, or whether any other defense to enforcement exists.  Thus, we reverse and remand the matter so that the trial court may make a factual finding on the threshold issue of whether an agreement to arbitrate exists.

## II.  FACTS AND PROCEDURAL HISTORY

On March 22, 2019, plaintiffs filed a civil complaint against defendants, alleging various employment claims.  Specifically, plaintiffs alleged they were misclassified as independent contractors while working under the "Amazon Flex Independent Contractor Terms of Service" (TOS).

On June 21, 2019, defendants filed a motion to compel arbitration of plaintiffs' claims.  Defendants argued that in order to work for them, individuals are required to download an Amazon Flex application onto a smartphone and accept the TOS displayed

on that application. According to defendants, the TOS contained provisions that require binding, individual arbitration of all claims.

In support of their motion, defendants attached a declaration of counsel detailing his efforts to meet and confer with plaintiffs' counsel prior to filing the motion to compel arbitration. Counsel attached a copy of the TOS to his declaration and stated it was a "true and correct copy of the TOS I sent to Plaintiffs' counsel." The TOS stated that it was an agreement between "Amazon Logistics, Inc. and you," but it did not otherwise specify to whom "you" was intended to reference. It did not contain plaintiffs' names anywhere on the document, did not bear any signatures on the document, and did not bear any notations indicating acceptance of its terms by any persons. Nor did the document reference the separately named defendant, Amazon, Inc., as a party to the agreement.

Defendants also attached the declaration of an expert from a consulting firm specializing in economic and statistical analysis. The expert stated that it was his understanding that all participants in the Amazon Flex program were required to agree to the terms of the TOS; that the TOS included arbitration provisions; and that the TOS further provided instructions for opting out of the arbitration provisions. The expert stated that upon review of "data and information" provided to him, he concluded that (1) both plaintiffs had participated in the Amazon Flex program since 2017, and (2) neither plaintiff had opted out of the arbitration provisions pursuant to the procedures specified in the TOS. The expert did not explain what data was provided to him or how he was able to reach these conclusions based upon this data.

Finally, defendants requested judicial notice of declarations submitted in support of motions to dismiss or motions to compel arbitration filed in unrelated state and federal litigation. The request for judicial notice and the attached declarations and documents were not included as part of the record on appeal.

On July 26, 2019, plaintiffs served their opposition to the motion to compel arbitration, arguing that defendants failed to meet their initial burden to prove the existence of a valid agreement to arbitrate; the type of claims brought by plaintiffs were not subject to the provisions of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.); the claims brought by plaintiffs were specifically exempted from arbitration under the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.); and the arbitration provisions in the TOS were unconscionable.

On October 4, 2019, the trial court issued a written order denying defendants' motion. The trial court made no findings of fact regarding whether defendants met their initial burden to show the existence of a valid agreement to arbitrate. Instead, the trial court denied defendants' petition on the ground that the legal authorities presented by the parties persuaded it that the language in the purported agreement would not be enforceable. The trial court also denied defendants' request for judicial notice of declarations filed in unrelated litigation. Defendants appeal from this order.

## III. DISCUSSION

On appeal, defendants argue the trial court erred in denying their motion to compel arbitration for three, independent reasons: (1) the TOS's arbitration provisions were enforceable under the FAA; (2) the TOS's arbitration provisions should have been

4

enforced under Washington law pursuant to its choice of law provision if the court determined the arbitration agreement could not be enforced under the FAA; and (3) the TOS's arbitration provision should have been enforced under the CAA if the court determined the agreement to arbitrate was exempt from the FAA and not governed by Washington law. However, we need not consider any of these arguments at this stage because the trial court failed to make a threshold factual finding regarding the existence of an agreement to arbitrate.

"A party to a contractual arbitration agreement may compel a recalcitrant party to comply with a valid agreement by means of a petition pursuant to section 1281.2, which is in essence a suit in equity to compel specific performance of the arbitration agreement." (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795.)

"Under federal and state law, a strong public policy favors arbitration and seeks to ensure ' "private agreements to arbitrate are enforced according to their terms." ' [Citations.] ' " 'However, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " ' [Citations.] ' "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." ' " (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 548.) "The ' " ' " 'policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.' " [Citation.] . . . "Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived." ' " ' " (*Avery v. Integrated Healthcare Holdings*, *Inc.* (2013) 218 Cal.App.4th 50, 59.)

5

Thus, "when presented with a motion to compel arbitration, the court's first task is to determine whether the parties have entered into an agreement to arbitrate their claims. [Citation.] Courts 'apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute.' " (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 685; see *Holley v. Silverado Senior Living Management, Inc.* (2020) 53 Cal.App.5th 197, 201 [" 'Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law.' "].)

The existence of an agreement to arbitrate is a preliminary factual question, which the trial court must resolve. (*Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 423; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219-1220 (*Toal*) ["[A] court, before granting a petition to compel arbitration, *must* determine the factual issue of 'the existence or validity of the arbitration agreement.' "].) The resolution of this factual question is " 'resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony.' " (*Goldman v. Sunbridge Healthcare*, *LLC* (2013) 220 Cal.App.4th 1160, 1169; see *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414.)

Here, the very first argument raised by plaintiffs in opposition to defendants' motion to compel arbitration was the failure of defendants to meet their burden to establish the existence of an agreement. Defendants directly addressed this argument in

their reply and at the time of oral argument.  Moreover, the trial court expressly identified

this as a contested issue in its written ruling.[1]  Despite this acknowledgement, the trial

**1**  Given this record, we are not persuaded by defendants' argument that the issue was conceded or otherwise undisputed.  While plaintiffs' complaint alleged the existence of a TOS, it did not otherwise set forth what the terms of that document were, let alone concede that the copy submitted with defendants' motion was the TOS referenced.  Further, given this procedural history, defendants' reliance on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 is misplaced.  As this court has previously explained, "Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged."  (*Ruiz v. Moss Bros. Auto Group*, *Inc.* (2014) 232 Cal.App.4th 836, 846 (*Ruiz*).)  However, if disputed, the evidentiary burden to establish the existence of an agreement remains on petitioner.  (*Ibid.*)  Clearly, the sufficiency of defendants showing here was disputed and defendants had the opportunity to address any authentication issues or supplement evidentiary gaps in reply.

court made no factual finding resolving this contested issue.[2]

The trial court was required to resolve the preliminary factual question of whether an arbitration agreement exists and did not do so in this case. Where the trial court "apparently abdicate[s] its role as a trier of fact in deciding the petition to compel arbitration, the case must be remanded to that court to resolve any factually disputed issues . . . ." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [reversing order denying petition to compel arbitration and remanding for determination of unresolved factual disputes].) Perhaps this was a matter of mere oversight; nevertheless, this threshold issue must be resolved.

---

[2] This is not a case in which the undisputed facts in the record compel only one reasonable conclusion as to whether defendants met their prima facie burden to show the existence of an agreement. The copy of the TOS submitted with defendants' motion contained no signatures, no markings indicative of acceptance by the plaintiffs, and did not even name the plaintiffs as parties to the agreement. Nor did defendants submit any declaration from a person with personal knowledge attesting that the copy of the TOS was a true and accurate copy of that presented to plaintiffs. To the extent defendants contend the arbitration agreement is electronic in nature, they also did not provide a declaration explaining the manner in which their electronic agreement was presented to plaintiffs, the manner in which the agreement is accepted, or any basis to conclude that any act of acceptance was one undertaken by plaintiffs. (See *Ruiz*, *supra*, 232 Cal.App.4th at p. 844.) Given the state of this record, we decline to adopt the dissent's view that we should express our opinion on the remaining issues raised on appeal because remand will inevitably result in an identical order, triggering an identical appeal of identical legal issues. We do not assume how the trial court will resolve the threshold factual dispute upon remand, let alone what, if any, additional evidence the trial court might accept upon remand. Nor can we predict how any additional evidence, argument, or consideration may impact any subsequent order. We instead find it prudent to follow the advice of our Supreme Court: "[I]f it is not necessary to decide more, it is necessary not to decide more." (*People v. Buza* (2018) 4 Cal.5th 658, 693; see *Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 881 ["[W]e do well to tread carefully and exercise judicial restraint, deciding novel issues only when the circumstances require."].)

## IV.  DISPOSITION

The order denying defendants' motion to compel arbitration is reversed, and we remand the matter for further proceedings.  Upon remand, the trial court shall make a threshold factual finding whether each moving defendant has met its evidentiary burden to establish the existence of an agreement to arbitrate with plaintiffs.  The trial court may, in its discretion, consider any requests by the parties to submit further evidence on any disputed factual issues.

If the trial court finds that an agreement to arbitrate exists between plaintiffs and one or more of the named defendants, it shall then make a determination as to whether such agreement, as between those parties, is enforceable under the FAA, an alternative choice of law provision or, in the absence of any other governing law, the CAA.  To the extent the parties contend additional legal authority on the proper interpretation of any alleged agreement has been issued during the pendency of this appeal, the trial court may, in its discretion, permit additional briefing on the issue by the parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

I concur:


RAMIREZ
P. J.

9

[*Pettie v. Amazon.com, Inc.*, E074241]

Slough, J., Dissenting.

The majority's decision ignores bedrock principles of appellate review and because of that pointlessly extends this dispute. I therefore respectfully dissent.

At issue in the case is whether Amazon can require the plaintiff delivery drivers to arbitrate employment disputes under the terms of their service agreement. The trial judge held the delivery drivers were exempt from the mandatory federal arbitration requirements by section 1 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., and the arbitration provision did not contemplate enforcement under state law if the FAA didn't apply. The trial judge therefore concluded there was no valid agreement to arbitrate and denied Amazon's petition to enforce arbitration.

Amazon appealed, and the parties asked us to decide (1) whether the plaintiff delivery drivers are exempt from mandatory federal arbitration requirements by section 1 of the FAA and—if so—(2) whether their arbitration provision is enforceable under state law instead of federal law.

Rather than decide those issues, the majority identifies a third—whether the parties had in fact entered the agreement containing the arbitration clause at the heart of the dispute—and concludes the trial judge was *required* to find there was a valid agreement *before* he could reach the other issues. According to the majority, if there was no agreement, the trial judge should have denied the petition on that basis. If he found there was an agreement, then—and only then—he could reach the other grounds for

1

denying the petition. The majority thus reverses the trial judge's order because he denied the petition for the wrong reason. (Maj. opn. *ante*, at pp. 6-7.)

This approach is wrong for many fundamental reasons.

First, courts decide cases as the parties frame and argue them. We typically avoid going out of our way to find issues the parties don't raise on appeal. "Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." (*United States v. Sineneng-Smith* (2020) 140 S.Ct. 1575, 1579 [cleaned up].) And where we exercise our discretion to raise unbriefed issues, we order supplemental briefing to allow the parties the opportunity to give us their considered views. (Gov. Code, § 68081 [[b]efore . . . a court of appeal . . . renders a decision . . . based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing].) The majority don't do that in this case. Instead—as appellant put it at oral argument—they injected the issue into the appeal sua sponte and without providing an opportunity to submit written argument. That was a mistake.

Second, courts are free to decide a case on *any* dispositive ground. It's simply not correct to say the trial judge was required to find the parties had entered an agreement to arbitrate before deciding the other issues in the appeal. (Another problem I have with the majority approach is I do think the trial judge determined there was an agreement, at least

2

implicitly.) It was completely within the discretion of the trial judge to *assume* there was a valid agreement but decide the case on the basis of the exemption under the FAA and the inapplicability of state law—both legal issues. Of course, for Amazon to prevail, it would have to prove there was a valid agreement *and* show the drivers were nonexempt under federal and state law. That's the import of the cases the majority cite for the proposition that "[t]he existence of an agreement to arbitrate is a preliminary factual question, which the trial court must resolve." (Maj. opn. *ante*, at p. 6.) As those same cases explain, that's what a court must do "before *granting* a petition to compel arbitration." (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219-1220, italics added.) It doesn't follow that to *defeat* a petition to compel arbitration an opposing party must obtain a ruling on the existence of an agreement to arbitrate before prevailing on the ground that the agreement isn't valid or is unenforceable on other grounds.

As the California Supreme Court has explained, "[b]ecause the existence of the agreement is a statutory *prerequisite to granting* the petition, the *petitioner bears the burden of proving its existence* by a preponderance of the evidence. If the *party opposing the petition* raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, *any fact necessary to the defense*. (*Rosenthal v. Great Western Fin. Securities. Corp.* (1996) 14 Cal.4th 394, 413, italics added.) Thus, the majority are misreading cases requiring a petitioner to establish the existence of an arbitration agreement before obtaining enforcement as requiring a trial court to rule on the existence of an agreement before denying a petition to arbitrate on

other independent legal grounds. I know of no authority so limiting the discretion of the trial courts.

The majority cite *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 for the general proposition that a trial court is *always* required to resolve the factual question of whether an arbitration agreement exists. (Maj. opn. *ante*, at p. 7.) But what *Engalla* holds is that the trial court sits as the factfinder on contract formation issues, and the trial judge in that case erred in ruling on a motion to compel arbitration by deciding whether there was a factual *dispute* as to whether the arbitration was fraudulently induced (as if resolving a summary judgment motion) and sending the factual question to the jury. (*Engalla*, at p. 973 ["The trial court was apparently of the view that it did not have to definitively decide the fraud issue in order to dispose of the petition, because that issue would be ultimately decided by a jury in the context of the Engallas' damages action"].) The decision doesn't mean a trial court can't set aside contract formation issues and rule on an independent legal basis that also disposes of the arbitrability issue before trial.

Third—and relatedly—we review the trial judge's decision for the correctness of its *result*, not the correctness of its *reasoning*. "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may

4

have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325].) Among other reasons, we follow this principle because "there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610.) And absent prejudicial error, we are not permitted to reverse the trial judge under article VI, section 13 of the California Constitution.

It doesn't take much reflection on what is likely to happen in this case to understand why appellate courts follow these principles. For the majority *do not* hold that the trial court erred by determining the plaintiff delivery drivers were exempt from the federal arbitration rules and they *do not* hold the trial judge erred by interpreting the arbitration clause as excluding enforcement under state law. So, what will happen when we remand this case to the trial court? I posit one of two things. Either the trial judge will find the parties *did* enter an agreement but reinstate his ruling on the same grounds set out in the order we are reversing. Or he'll find the parties *didn't* enter an agreement and deny the petition on two *alternative* grounds—lack of agreement and the grounds of his original order.

In either event, the majority's decision in this case is likely to keep the parties mired in the same disputes for years. No doubt after the trial judge rules a second time, the parties will appeal the same issues again. I would decide them now. Perhaps the

parties can take some comfort that they'll be able to economize by recycling in a

subsequent appeal the briefs they prepared to no effect in this one. [1]

SLOUGH
J.

---

[1] Contrary to the majority's suggestion, avoiding these issues is not justified as a matter of prudence. The cases they cite rely on the doctrine of constitutional avoidance or the advisability of reserving judgment on novel issues of statutory construction. (Maj. opn. *ante*, at p. 8, fn. 2, citing *People v. Buza* (2018) 4 Cal.5th 658, 693 [relying on prudential doctrine of constitutional avoidance]; *Matrixx Initiatives*, *Inc. v. Doe* (2006) 138 Cal.App.4th 872, 881 [refusing to provide guidance interpreting a new statute after remand].) There are no such difficult constitutional or statutory issues here, just common contractual issues the trial court determined independently warranted denying the petition to compel arbitration. Refusing to address the briefed issues isn't prudent, but an abdication of our responsibilities as an appellate tribunal.